In this case, an immigration judge found, as a matter of fact, that Ms. Garcia-Mata had proven she was more likely than not to be persecuted in Mexico because she had been named as a cooperating witness in a criminal prosecution of a human smuggler. Counsel, I don't mean to interrupt you too quick, but that sounds like a legal conclusion, if I ever heard one, with all the stuff in there. Tell me the facts that the IJ found, and then tell me the way you say the BIA found different facts. Okay. So the board has set out the standard for which part is fact, which part is law. The board's case is called Matter of ZZO. In that case, the board says, the prediction of what is going to happen in the future, predictive fact findings, is a finding of fact that the board reviews for clear error. The question of whether those facts meet the definition of persecution is a question of law. The board reviews de novo. This case, I think, presents mixed questions. The board sort of dove into both and didn't really parse whether it was doing clear error review or de novo review, but in the meat of it, you can see de novo reversal of IJ fact finding. Specifically, there's about four ways we can see in the record that the board used de novo review instead of clear error review. Well, counsel, by Supreme Court footnotes in general and by this court's jurisprudence in most circuits, mixed questions get de novo review. I don't mean to say it is a mixed question of law. What I mean to say is there's some fact stuff here and there's some legal stuff here, and we can find the fact stuff, at least in the way the board talks about it. Get some facts. Okay. So the text of the board's decision makes it pretty clear that they were reviewing the IJ's fact finding de novo. Specifically, when the board quibbles with the immigration judge's treatment of these text messages, the board says, we don't think they were as credible or we don't think they were as immediate as the immigration judge said. That finding is a fact finding. Matter of ZZO talks about the prediction of what is likely to occur based on the evidence that very much deals with threats, whether the threats that have been launched at you are likely to occur in the future. The board's decision to sort of nitpick and pick apart the IJ's analysis on these text messages is a reversal of a fact finding, and yet the board doesn't specifically say it's doing clear error review, and in the text of it, it looks a lot like de novo review. What's the specific paragraph of the opinion that you're referring to on the text messages that you say shows de novo review? Is it on page two? It's on page two. Is it the second paragraph? It is. Second paragraph? Yes. It's the last sentence, or the last two sentences of the second paragraph and the start of the third. The dissent is also a good at least indication. Well, it says, we agree with DHS that the IJ's finding is not supported by the evidence in the record. Now, what does that mean? Could that mean clear error? We think it's de novo. The court in Ramirez-Perot said when the board is doing clear error, it has to say so. That it has to state the standard, and it has to say which specific facts it's finding to be clearly in error. Who said that? This court in Ramirez-Perot. It's a convention against torture case, but it's similar. There's a couple other ways we know that, though. The dissent, the dissenting board member said, we are limited to clear error review. The Department of Justice in its briefing says, well, she was just saying what the standard is. I think her use of the words, we are limited, is an indication to the majority, you guys have overstepped your bounds. Well, in her view, there was not a clear error, but I don't know whether that tells us whether the majority found a clear error, you know, concluded that there was a clear error, and she just disagreed, or whether... I think the words, we are limited to clear error, combined with the fact that the majority doesn't even say the standard, it doesn't say clear error, is a pretty strong indication. The fourth is, we know what the board did. The board did not remand. If the board finds clear error in fact finding, it's supposed to remand to the immigration judge to re-find the facts, because the board can't do that on its own. It's not a fact-finding body. Here the board did not remand. It reversed the IJ's decision and just ordered her removed. We think that's a de novo action. They de novo reweighed the facts. Not just the text messages. Another reference, page five of the record, the board said that the IJ was speculating about whether these threats were credible or not. There's nothing in the record that says the IJ was speculating. He didn't say he was speculating. So for the board to say this is mere speculation is really a finding of fact, and it's a finding of fact the board isn't entitled to do. I found the quote. The quotation from Ramiro's payroll is that the board, and I quote, does not conclude that there was clear error in the IJ's express finding, and thus the court reversed. I think the last point is that the department essentially concedes this point in its briefing. At page 25 of the department's brief, it characterizes the discussion over the text messages as follows, and I quote, it merely weighed the messages differently from the IJ because they came from an unidentified source. That's the quotation from the department's brief at page 25. If the attorney general believes the board re-weighed the evidence, weighed it differently from the immigration judge because it didn't like the source, that's de novo review, and that's exactly what the board isn't allowed to do. The trial judge is empowered with special tools. They can look the petitioner in the eye. They can weigh her credibility. Well they claim they're relying on our Waldron case, so what do you think about Waldron? I think Waldron is a reversal. Waldron is a reversal for lack of fact-finding. In fact, the court in Waldron upheld a portion, the legal issue, but then reversed because they said the board had engaged in fact-finding that wasn't permitted. But Waldron says the board has discretion to weigh the factual findings differently. They can accept the facts, then weigh them differently. They can when they're applying the facts to the law. The matter of ZZO came out after Waldron, and I think it cleared up this question about which part is law, which part is facts. Yeah, but that's not our case, so you're, so. It's a board case, you're right. I mean, the court isn't bound by it, but the court generally would defer to agency determinations interpreting their own regulations, which is what this is. I think this is a little bit different than Waldron though, because the board here isn't saying we're going to take the facts, the facts as they were found, and apply them differently to the standard. The board here said we don't like the IJ's facts. The predictive finding about what's going to happen, we don't think it's supported. You mean the board could say we accept these facts, but we don't think that amounts to persecution as a legal matter. Sure. You think that's permissible? I think that would be permissible. But you say what they did here was on the first step to say we don't accept these facts. Right. And that has to be a clear air finding under the rules of the board. I think so, and I think they have to say it. I would- So what do you want as relief? You just want a remand to the board and directing the board to articulate the standard of review and then explain their rationale better? I think the cleanest solution is to remand, because it gives the board a chance to explain itself. The court, I think, could grant this person withholding of removal, because she's already been granted that by the immigration judge. And the board, you could reverse the board's decision and just end the case. I would prefer a remand. I don't understand that under administrative law, how we could do the other anyway. There's no law in this circuit that says that it can. I think the Ninth Circuit has said it can, because it's a non-discretionary finding. It's a withholding. But I agree, that's not what we're asking for. Again, the Ninth Circuit says that what can happen? That the court could simply reverse the board, and thus she's granted withholding of removal, and not tell the agency to have more proceedings, because it's a non-discretionary required grant of relief. But I don't think the board- But only if the facts are as- Right. Yeah. And this isn't that clean of a case, where you have, I mean- What you're really saying is, we don't know if the board, I think what you're saying is, I guess maybe you're saying you think we know that the board applied de novo review, but you might be saying it's not clear whether the board, what the board was doing, because it mixed things together. At a minimum, it's not clear. Yeah. Because you have this, I think, sort of snarky opening line from the dissent saying, hey guys, we have limitations. But she doesn't specifically say, you guys applied de novo review. Then you have the majority opinion that doesn't say de novo or clear error. I think a remand would clear this up. Well, if it went back on remand, and the board said, we think these findings were clearly erroneous, and then explained why they thought so, then you'd have to appeal again on whether that's, I suppose, whether that finding or conclusion is supported by substantial evidence. Is that how it would go? It depends, because the board can't do its own fact finding. So if they say clear error, then they have to send it back to the immigration judge to say what the facts are. The board can't do that on their own. One of the problems in this case is that the immigration judge's decision is so short. Because at trial, the department said, we're only going to be basing our argument on this one issue. Has she been persecuted in the past? We're waiving this other issue, a particular social group. And then when it got up to the BIA, the department points to these things missing from the immigration judge's decision and says, look, it's a sloppy decision, well, it's short, and he said, I'm giving a short decision because they waived those issues at trial. So we don't have a clean enough record, I think, from the fact finder. If the Department of Homeland Security wished to challenge those issues, we probably would have conducted ourselves differently at trial. We don't know that until we get up to appeal, and the judge's sort of cursory decision is thrown under the bus. Why would it go back to the IJ if the board says these findings are clearly erroneous? Well, it depends on which part. And what's left does not support relief, and therefore, couldn't the board just rule at that point that relief is not warranted? Yeah, I think if the board did clear error review, they could. Yeah. I see. If the board could say- But then you could appeal that if you thought they weren't. And then the court could review- I guess that would be substantial evidence review, then? It would, because then the court could review whether any evidence in the record supported that decision. I think there is evidence in the record. Now, neither the IJ nor the BIA really talked about it. The IJ's decision says, I looked at all the evidence and I considered it, no matter whether I mention it. The board in footnote two says, we didn't look at all the evidence. We looked at the testimony and the text messages, because that's all the immigration judge considered. We think that by itself was an error, because for the board to do clear error review, it has to look at the whole record and figure out, does it support the immigration judge's decision? But on remand, the board could do that. It could fix the error, and then we would have a cleaner record. If we lose, we file another appeal and the court can review the record. Hopefully, we would win. She's already been granted withholding of removal by a Department of Justice immigration judge. I'll reserve the rest of my time. Thank you very much. Very well. We'll hear from the government, Ms. Glazer. Is it pronounced Glazer or Glazer? Glazer. Glazer, of course. Thank you. Good morning, your honors. Ms. Garcia-Mata bore the burden to present evidence on all aspects of her claim, and she simply failed to meet this burden. Now, as council points out, the immigration judge did grant withholding of removal to her. But despite her failure to meet this burden, and the board reversed citing the problems with the immigration judge's decision. The board specifically found problems with what was likely to occur to her, and whether the Mexican government was unable or unwilling to protect her, and her claim fails on both of these points. Did it find fact? Did the BIA find facts? The board did not find facts. In what council is pointing to regarding the finding, I think what he's pointing to is regarding the immigration judge's finding that the smuggling organization had the capability and knowledge to carry out any threats it had made against Ms. Garcia-Mata. Now, while the board did not say we are finding clear error in that finding, that's exactly the analysis that the board did. And the board did cite the relevant regulation, it's 8 CFR 1003.1 D3, that sets forth that it will apply clear error review to findings of fact, and de novo review to questions of law. And what the board did is it acknowledged the evidence that the immigration judge based this finding on. It addressed that evidence, and that particular paragraph shows that the board, in fact, did look through the record and find that there is absolutely no evidence to support that finding. Now, the immigration judge based it on Ms. Garcia-Mata's testimony that she overheard someone in the house in Nogales getting beaten for not getting the job done, and a comment that the smuggling organization had been around a long time and did not leave any loose ends. Now, if we look specifically to that first part of her testimony, this is on page 150 to 151 and on 252, she specifically testified that she heard what sounded like a person being beaten up. Because someone was supposed to be looking out for the Mexican army, but didn't and got caught. And when she heard that person being beaten, she heard somebody saying, quote unquote, this is what happens when you don't get the job done. So that testimony and what she heard had nothing to do with her or that finding of fact by the immigration judge. It had to do with someone in the smuggling organization who didn't do what he or she was supposed to do and apparently got beaten for it. But it had nothing to do with an individual in her circumstances who hired the organization to smuggle her in. And while she was then paroled in to serve as a witness for the prosecution, she never even had to testify. But it had absolutely nothing to do with someone in her circumstances and whether the organization would have the capability or has the capability and knowledge to carry out threats against her. And the second comment, that the organization had been around a long time and didn't leave any loose ends. That was said to her when she was in the house in the gallows before anyone imagined that she and Mr. Stueckle would be caught at the border. And in her testimony, she makes it clear that that comment was said when someone in the organization was explaining in what the organization was about to her that essentially what exactly that person said. That the organization had been around a long time, had a lot of experience and crossed all of its T's and dotted all of its I's. And probably trying to calm her nerves down a little bit to make her feel a little bit better. And that is all on page 148 to 149. And then the board was correct too that there is absolutely no evidence in the record to support this factual finding. Now there are articles in the record that relate to the treatment of individuals who were long term informants with the US government against drug cartels. And these individuals, their testimony in cases led to the convictions of countless individuals, including very high level individuals. But again, she is an individual who was paroled into the United States to testify. But she never even had to testify because Mr. Stueckle pled guilty. None of this evidence in the record supports this finding by the immigration judge. And the board did this correctly. And again, the specific finding that was an error was what? Was that the smuggling organization has the capability and knowledge to carry out any threats against witnesses. Now, let's go on the question whether the board applied its own rules. Okay. What do you rely on to say that we know the board applied clear error review and not de novo review? The fact that the board did cite the relevant regulation in everything that the board did. And we look at cases in this court where this court has found that the board didn't apply the proper scope of review. In Ramirez-Perot in particular, all the board did in that case was say, in its decision, we find clear error in this particular finding of fact. But the board didn't acknowledge any of the evidence that that was based on, didn't address any of the evidence, and didn't make any indication that it had in fact looked through the record to see if the immigration judge had made a mistake in reaching that finding. And also in Waldron, that was a case regarding whether an individual met the hardship requirement for a 212H waiver. And in that case, the immigration judge found that he did, and the board reversed. And in reversing, the board used statements that were contradictory to what the immigration judge had found to support the determination. And again, didn't address any of the evidence on which the immigration judge had relied on, didn't acknowledge any of it, didn't look at anything in the record. And so this court said, even if you are finding clear error in these particular findings, you haven't explained anything. But the board in this case did in fact explain what it was doing. Yeah, the board here explained, but they didn't say they were finding a clear error. That's true, that's true. So what do we do with that? I don't think anything has to be done. I still think substantial evidence supports the determination. And even though the board didn't use that particular word, it's clear from what the board did in that paragraph that it was applying clear error review. And it would be futile to send it back. Why should we paper over the board's failure to do what it should have done? I'm sorry? Why should we paper over, in effect, what the board failed to do? I think in this case, the fact that the board didn't use that phrase really was harmless error, for lack of a better word. Because it could be sent back, and the result is still the same. The board will add in a line saying we're finding- If that's what they were doing, they'll add in a line. But if it comes back and they, you presume that they would do that. But isn't that circular? Doesn't that assume the answer to the question, whether they were, in fact, applying clear error review? I don't think so. I think from what they were doing, they clearly were finding clear error. And we look at the rest of the evidence in the case, and what the board found in terms of whether she met her burden to show it is more likely than not that she will suffer harm rising to the level of persecution if returned to Mexico. And we do have these text messages, and council makes the argument that the board, in finding that the text messages don't support a finding of persecution, that the board was doing some sort of clear error review and overstepping its bounds. But all the board was doing was using factors that this court has set forth to determine if threats support finding a persecution. The fact that they were not specific, they were lacking in immediacy, and they were not so menacing as to cause actual suffering or harm to her family. These are factors that this court has set forth, and I can cite two cases. One is Malanga, that's 621 F3rd 757, and Lottie Ha, that's 588 F3rd 574. And in both of those cases, there were threats that were arguably more menacing than they were in this case. And using those factors, this court found that those threats did not support a finding of persecution. Council, let me ask you, on page 25, do you contend, and I think you say it, but is it your position that the board was just weighing the evidence differently? It is. It is my argument that- Okay, well, you know the Waldron case that you rely on for that. On page 360 of the Waldron case, it says the IJA's findings of fact may not be overturned simply because the board would have weighed the evidence differently. Right, well I guess I'm saying- That's the black letter law. In saying that the board weighed the evidence differently, what I was trying to say was the board looked at the facts in the case and in determining whether they met the legal, Ms. Garcia-Mata's legal burden, that the board found that they didn't. That's really what I was trying to say. We, the court, say on the next page, the BIA has a discretion to weigh them differently when you accept all the IJA's facts. And then you're only at the stage of the ultimate determination. Do you follow that? Do you see the distinction I think this court is trying to draw between pages 360 and 361 of Waldron? I see what you're saying. Okay, which side's this case on? Is it on page 360 or page 361? I don't want to confuse this. If you could repeat it again just so I can get the right answer. No, I just meant to say, is it the first standard that's on page 360 or is it the standard on page 361? I believe it's on 360 from, if I'm- No, no, I'm sorry. Which is on 360. I'm being obscure with you. The first, let's do first statement. The first statement is the IJA's findings may now be overturned simply because the board would have weighed the evidence differently. That's the standard on the first page. It's called the first page. I'm sorry. And on the second page, we say the BIA has the discretion to weigh the factual findings differently than when making the ultimate determination. The latter is what the board did in this case. Okay, you believe it's the ultimate determination? Yes. Well, but don't you weigh them differently when you start parsing them? Doesn't the BIA weigh them differently when they start parsing them and describing what they really think the facts are? What the board was doing, again, was not what the facts of these threats were. It was looking at factors that this court has set forth to legally determine if threats rise to the level of persecution. For example, in that case, Malonga, that I mentioned earlier. This court found that even if the threat, quote unquote, we will have your skin, was a death threat, it did not support a finding of persecution because it was too exaggerated, it was not specific, and it was lacking in immediacy. And so this court has set forth these factors to make that legal determination as to whether a threat supports a finding of persecution. And that's what the board was doing in this case. And the record does not compel a contrary conclusion. Ms. Garcia-Mata herself on page 157 and 165 testified that even though these text messages that her husband received were a veiled threat, no one in the organization had ever threatened to kill her. And when she was asked on multiple occasions during her merits hearing on 155 to 157 what she thought these messages meant, she consistently replied that these messages meant that this individual, El Chicano, wanted to talk to her and ask her what she said. Counsel, how can we make any sense of the page two's key statement in this case? We agree with the DHS that the immigration's findings are contrary and not supported by the precedent of the court, a circuit. How can findings not be supported by the precedent of a court? Get it? I get what you're saying. That's making findings of law. That's no good, right? I think- They have an or in there. You see my or. You know what I'm saying? Yeah, I do see what you're saying. You know, to be completely honest with you, this is not the most well-written decision I've ever seen by the board. It's really not. And that particular sentence is a little odd. But I think all the board was saying is that while it used the word findings, it shouldn't have used that word. I don't think it was referring to factual findings. It was really referring to determinations, conclusions. And whether that ultimate conclusion, whether she met her clear probability of future persecution for withholding. You've lost me a little bit, because I thought you started out your argument saying the board did find clear errors. It found clear error in the finding that the smuggling organization has the capability and knowledge to carry out any threats it had made against her. On page three. On page three. But as to the- So you're saying they found that was clearly erroneous. Yes. And then they took the rest of the facts and did a re-weigh, or you know, weighing. And applied de novo review, really, to determine that she did not establish, it is more likely than not, that she will suffer harm rising to the level of persecution. What about Mr. Hoppeck's complaint about footnote two, that if you- Footnote two's a little awkward too, and I think all the board was doing was observing what the immigration judge relied its decision on, and saying then our decision is based on the findings of the IJ. And while counsel argues that the immigration judge in this case didn't look through the entire record, and maybe should have set forth all the findings of fact, that's just simply not true. The immigration judge in this case, on page, let's see. Well, I think his argument is it should have been remanded once. If, in fact, the board did find one fact to be clearly erroneous, then we don't know what the IJ would have done if not permitted to rely on that fact. The IJ might have found more facts, or- Well, I disagree with that, because in this case, there is really nothing to show that anyone in the smuggling organization has any interest in harming her, and so the board's decision really was correct. We have this woman who hired a smuggling organization, and she says she heard all of these things in the house. And she's really asking the court to take this evidence completely out of context. All we have are these text messages that she concedes, or that someone wants to talk to her. No one wants to harm her. She testified, no one threatened to kill her. And I'll also ask your honors to please keep in mind that this is a case where, while she and Mr. Seucolt were pulled into secondary inspection at the border. On page 269 and 285, the record makes clear that it was not her fault. She was in fact permitted to cross the border. And Mr. Seucolt did or said something that caused CBP's suspicions to be aroused. It's not clear from the record what he did or said, but that's what caused the two of them to be pulled into secondary inspection. So they were, and she was paroled in to serve as a witness, but again, she never even had to testify. That's on page 160, so she's really asking the court to make a lot of jumps and leaps in finding that her burden is to show that the record compels a contrary conclusion. And she has not in her brief or in her argument before this court shown that. And substantial evidence does support the determination specifically that she didn't show it's more likely than not that she will suffer harm rising to the level of persecution. These text messages don't support it. No one's heard from the smuggling organization since November 2015. And the board did properly find clear error in the determination and finding that no one in the smuggling organization would even have the capability and knowledge to carry out any threats it had made, which were just that they wanted to talk to her. And I see my time is up. In contrast to the careful analytical views of my colleagues, I have a more impressionistic view. What would be wrong with remanding this case for further findings? And your answer might be, it would not be consistent with our earlier decisions. Is that your answer? Well- That we're on counter to what we've said in clearly comparable cases? I think the cases were different because the board in those cases didn't address any of the evidence, didn't acknowledge the evidence, didn't look at the record, and just sort of made these statements. And didn't- Well, obviously you're advocating for the government. Sometimes with judges, especially I, who tend to take a more impressionistic view that what's the big harm? I guess that's a problem that I'll have to answer myself. But thank you for your argument. Thank you. I'll be brief, just two things. The department's attorney alleges all we have are text messages. It's true, all the board considered were text messages. That's what footnote two says, and the testimony. But the record has a whole lot more than that. It has a sworn statement she gave at the border saying she had been threatened. It has her husband's sworn statement at page 269. It has a caution sheet from the jail that said this is a, that's at page 299, which is what you give to an inmate who is in danger for having cooperated with the prosecution. Evidence that she is in danger. And then fourth, the federal court filings that are available to anybody with a PACER account identifying her as a cooperating witness. We have more evidence than just text messages. The problem is the board didn't look at any of the other evidence, and it said so explicitly. Rarely do we get such an explicit statement as you find in footnote two. Did the IJ rely on that other evidence? He specifically said he did. He said, even if I didn't talk about all the evidence, and that's at pages 74 and 75 of the record. He said, even if I didn't talk about all the evidence, I looked at all of it. I think the IJ did do a careful, concerted job. He held a day-long trial, listened to all of the evidence, and said he had read all of the record. Counsel, can the word findings mean conclusions? It could mean legal conclusions. I think it means factual findings in the context of the board. How do we know? On page two, when it says we agree the immigration judge's findings. I think we can read matter of ZZO, and ZZO talks about factual findings. There's a different word for legal conclusions, and that's legal conclusions or conclusions of law. That's, I think, also the way the regulation is worded, the regulation that talks about the standard of review. What about the fact that they cited the regulation that includes the standard of review? If you go to that regulation, it includes both the de novo and the clear error standard. So that doesn't tell us which one they were using. The deeper- I mean, it includes both because it includes de novo as to legal matters. Right. So I think her point is, we presume that they know their own regulation. If they cite it, they must have been applying de novo to legal issues and clear error to factual findings. Yeah, the court had this issue in Ramirez-Pero, because in that case, the board had specifically said clear error when it talked about the standard. And the court said in Ramirez-Pero, that's not good enough. We have to look at what the board actually did. And the board here did de novo review, even though at the top it said clear error. That's what, and the Ramirez-Pero citing, I'll get a page for you. The last thing I want to mention is an argument my colleague made about that the board will just add a line when the court remands it. Counsel doesn't represent the board. Counsel represents the attorney general. There is a regulation that permits the attorney general to certify this case to himself if he wants to, if he wants to re-decide the case and add a line. Well, I think she's just predicting. This issue came up in a Seventh Circuit case called Marin-Rodriguez v. Holder, where the Seventh Circuit said, if the attorney general wants to say what the board is going to do, the attorney general can do it by certifying the case to himself. Otherwise, the attorney general can't say what the board is going to do. The board is an independent body, and the court should remand the case for the board to do its work. Thank you. So, again, I think I've got this written. I think I wrote this down fairly clearly. We must not look at just what the board want. Do we have to look at what they said as well as what they did? We have to look at what they did. That's the most important part. Okay. Because in Ramirez-Pero, that was the issue. They had said at the top, clear error, but then when they got to the bottom, they were definitely doing de novo. Thank you. Well, we thank both sides for the argument. The case is now under submission.